UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROLEX WATCH U.S.A., INC.,

      Plaintiff,

v.                                      Case No:  2:12-cv-542-Ftm-99SPC

JAMES MICHAEL LYNCH, UNKNOWN
WEBSITES 1-10, JOHN DOES 1-10 and
UNKNOWN ENTITIES 1-10,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on the Plaintiff, Rolex Watch USA, Inc.'s Motion for the Entry of a Final Judgment and Injunction by Default against Defendant (Doc. #13) filed on December 21, 2012.  No response or opposition has been filed by the Defendant Lynch and the time to do so has expired.  The Motion was referred to this Court by the District Court on April 19, 2013, and is now ripe for this Court's review and submission of a Report and Recommendation.

## FACTS

      The Plaintiff, Rolex Watches USA, Inc., is the sole distributer of Rolex watches, watch bracelets and related products in the United States.  Rolex watches are generally considered high quality and high end products and the watches and related products are protected by registered trademarks. Rolex Registered Trademarks include but are not limited to Rolex President, Crown Device (design), Datejust, Seadweller, Oyster, Oyster Perpetual, GMT-Master, Yacht-Master, Submariner, Rolex Daytona, Daytona, Explorer II, Turn-O-Graph, and GMT-Master II

(collectively Rolex RegisteredTrademarks). The Plaintiff filed its Complaint in this case on October 1, 2012, alleging the Defendant James Michael Lynch was distributing counterfeit watches bearing Rolex Registered Trademarks over the internet.

In its Complaint, the Plaintiff asserts that on or about May 7, 2012, Rolex discovered a classified advertisement appearing on Craigslist website advertising for sale watches bearing counterfeits and infringements of the Rolex Registered Trademarks. These watches were listed for sale for $125, $130, and $140, far below the regular retail price of Rolex Watches. (Doc. # 1, Ex. 2 at ¶ 13). Rolex forwarded this advertisement to its private investigator, Charles Berthiaume, located in Florida. Subsequently, Rolex's investigator Berthiaume contacted members of the Lee County Sheriff's Office (LCSO) to arrange an undercover purchase.  On or about June 1, 2012, LCSO deputies met with Defendant and during this meeting Defendant Lynch had in his possession and offered for sale five (5) watches bearing counterfeits and infringements of the Rolex Registered Trademarks. Defendant informed the members of the LCSO that these watches were "imitations". Members of the LCSD purchased these watches and followed Defendant back to his residence. At that time, members of the LCSD detained Defendant.  Defendant consented to a search of his home and vehicle; Defendant had in his possession fifty-three (53) Rolex Watches and various other merchandise bearing counterfeits of other luxury brands' trademarks. (Doc. # 1, Ex. 2, at¶¶ 15-16).

Thereafter, Rolex's investigator was able to identify these watches as bearing counterfeits and infringements of the Rolex Registered Trademarks and that such watches were not authorized reproductions. (Doc. # 1, Ex. 2, at ¶ 17).  The Defendant was then arrested by deputies of the LCSO.  After his arrest, Defendant stated to LCSD members that he knew the Rolex Watches were not genuine and he was purchasing and selling them for well under the

market value for genuine Rolex watches. (Doc. # 1, Ex. 2, at ¶ 18). Defendant, in connection with his distribution of watches bearing counterfeits and infringements of the Rolex Registered Trademarks, was charged with the following violation: counterfeiting goods exceeding $20,000 in value in violation of FL Stat. § 831.032(3)(a)(2). Subsequently, the Defendant pleaded guilty to the charges asserted against him. (Doc. # 1, Ex. 2, at ¶¶ 19-20).

On October 1, 2012, this action was filed against Defendant; Defendant failed to appear in the time prescribed by the Federal Rules. On December 6, 2012, a Clerk's Default was entered against Defendant. The Plaintiff now moves the Court for an entry of a default judgment, damages, and for a permanent injunction to prevent the Defendant from ever using its Registered Trademarks to sell counterfeit goods.

## DISCUSSION

The Plaintiff moves the Court for entry of a default judgment, for damages and for a permanent injunction.   The Court will address each issue separately.

### 1. *Default Judgment*

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). ABS-SOS Plus Partners Ltd. v. Vein Associates of America, Inc., WL 5191701 *1-2 (M.D. December 10, 2008) (citing DirecTV, Inc. v. Griffin, 290 F. Supp.2d 1340, 1343 (M.D. Fla.2003).  In this instance, the Defendant was properly served on November 9, 2012. (Doc. # 8).  The Plaintiff moved for a clerk's default which was subsequently entered on December 6, 2012. (Doc. # 11). To date the Defendant has failed to answer, respond or otherwise make an appearance in this case.   Having determined that the Defendant has failed to answer or otherwise defend against

the Complaint, the Court must now look to see if the allegations in the Complaint provide a sufficient legal basis for the entry of a default judgment.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. Nike, Inc. v. Austin, WL 3535500 *1 -2 (M.D. Fla. October 28, 2009) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to" a default judgment. Nike, Inc., WL 3535500 at *1 -2 (citing Fid. & Deposit Co. v. Williams, 699 F. Supp. 897, 899 (N.D.Ga.1988)).

"To prevail on a claim of trademark infringement ..., plaintiffs must establish: (1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred 'in commerce,' (4) that the defendants used the mark 'in connection with the sale ... or advertising of any goods,' and (5) that the defendants used the mark in a manner likely to confuse consumers." North Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1218 (11th Cir.2008).

After five years of continuous use, the owner of a registered trademark can obtain incontestable status by filing an affidavit affirming that certain statutory requirements have been met. Wilhelm Pudenz, GmbH v. Littlefuse, Inc., 177 F.3d 1204, 1208 (11th Cir.1999) (citing 15 U.S.C. § 1065). Incontestable status is conclusive evidence of the registrant's right to use the trademark, subject to certain enumerated defenses. Id. (citing 15 U.S.C. § 1115(b)). Incontestability narrows, but does not eliminate the grounds upon which the trademark's validity may be called into question. Id.

In this instance, Rolex alleges the Defendant Lynch violated eight (8) separate Registered Trademarks which have been in use for over five (5) years. Specifically, Rolex claims the Defendant violated the following Registered Trademarks:

| Trademark | Registration Number | Registration Date | Goods |
|---|---|---|---|
| Crown Device | 657,756 | 1/28/1958 | Timepieces of all kinds and parts thereof. |
| Datejust | 674,177 | 2/17/1959 | Timepieces and parts thereof. |
| Day-Date | 831,652 | 7/4/1967 | Wrist watches. |
| Daytona | 2,331,145 | 3/21/2000 | Watches. |
| Oyster Perpetual | 1,105,602 | 11/7/1978 | Watches and parts thereof. |
| Rolex | 101,819 | 1/12/1915 | Watches, clocks, parts of watches and clocks, and their cases. |
| Submariner | 1,782,604 | 7/20/1993 | Watches. |
| Yacht-Master | 1,749,374 | 1/26/1993 | Watches. |

By failing to answer the complaint, the Defendant Lynch has admitted that Rolex registered the marks at issue and has used them continuously for five years or more. Nike, Inc., WL 3535500 at *1 -2. This is sufficient to establish the first element of trademark infringement, that the marks are valid. Also by failing to answer the complaint, the Defendant Lynch admits that he used the Registered Trademarks in commerce in connection with the sale and advertising of goods. Id.

As to the last element of trademark infringement, "[s]even factors are relevant when determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark, (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity

between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent ...; and (7) actual confusion." North American Metal Corp. v. Axiom Worldwide, Inc., 522 F.3d at 1220 (citing Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc., 222 F.3d 895, 907 (11th Cir.2000)).

By failing to answer the complaint, Defendant Lynch admitted that Rolex's marks are strong, and that the marks he used are the same or colorably similar to Rolex's marks. PetMed Express, Inc. v. MedPets.Com, Inc., 336 F. Supp 2d 1213 (S. D. Fla. 2004).  The products involved are the same, namely watches. The Defendant Lynch also admitted that he willfully infringed Rolex's marks after having actual and constructive knowledge of Rolex's marks. (Doc. # 13-1, ¶ 18).  These admissions are sufficient to establish the likelihood of confusion over the validity of the marks used by the Defendant Lynch on the counterfeit watches and the genuine Registered Trademarks employed by Rolex.  As such, the Court recommends the Defendant Lynch is liable for infringement of Rolex's Registered Trademarks.  Therefore, it is respectfully recommended that a default judgment should be entered against the Defendant James Michael Lynch for failing to defend or otherwise appear in this case.

## 2. *Statutory Damages*

The Defendant also moves the Court for damages caused by the Defendant's actions. The Lanham Act permits a plaintiff to elect either actual damages or statutory damages. Nike, Inc., WL 3535500 at *1 -2. In a counterfeiting case, a court may award statutory damages of "not less than $1000 or more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). Statutory damages increase to not more than $2,000,000 per counterfeit mark if a defendant acts willfully. 15 U.S.C. § 1117(c)(2).

Here, the Plaintiff seeks $100,000 for each one of the eight (8) marks infringed upon by the Defendant Lynch for a total of $800,000.  The Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." Nike, Inc., WL 3535500 at *1 -2 (quoting Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F.Supp.2d 567, 583 (E.D.Pa.2002)); Tiffany (NJ) Inc. v. Luban, 282 F.Supp.2d 123, 124–25 (S.D.N.Y.2003) ("The statute 'does not provide guidelines for courts to use in determining an appropriate award' and is only limited by what 'the court considers just.' ") (internal citation omitted); see also PetMed Express, Inc. v. MedPets. Com, Inc., 336 F.Supp.2d 1213, 1217 (S.D.Fla.2004) (citing Tiffany and other cases for the same proposition); Punch Clock, Inc. v. Smart Software Dev., 553 F.Supp.2d 1353, 1357 (S.D.Fla.2008) (same). Many courts look to the Copyright Act's analogous provision, 17 U.S.C. § 504(c), in this situation. See, e.g., Tiffany, 282 F.Supp.2d at 125; Louis Vuitton, 211 F.Supp.2d at 583; Sara Lee Corp. v. Bags of N.Y., Inc., 36 F.Supp.2d 161, 166 (S.D.N.Y.1999).

Under the Copyright Act, courts consider factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." Nike, Inc., WL 3535500 at *1 -2; Tiffany, 282 F.Supp.2d at 125 (quoting Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., 807 F.2d 1110, 1117 (2d Cir.1986).

Rolex submitted no evidence with the instant motion concerning the expenses saved and profits reaped by Defendant Lynch or its lost revenues due to Lynch's acts. Since, the Defendant has refused to participate in this litigation, Rolex has been deprived of the ability to obtain discovery from him in order to calculate such damages.  Thus, without discovery, Rolex is

unable to ascertain the actual scope of the Defendant's sales.  However, "[t]he statutory damages provision was added in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept ...." <u>Tiffany</u>, 282 F.Supp.2d at 124 (quoting S. Rep. No. 104–177, at 10 (1995)); <u>Rolex Watch U.S.A v. Lizaso-Rodriquez</u> 2012 WL 1189768 * 4 (S.D. Fla. April 9, 2012).  Because Defendants have failed to respond to Rolex's Complaint, participate in discovery or respond to the instant motion, an actual damages calculation is extremely difficult if not impossible. <u>Tiffany</u>, 282 F.Supp.2d at 124 (finding it impossible to calculate damages in cases where no response or answer to the complaint has been filed).

In determining whether or not the suggested damages are reasonable and just, the Court must look to see if the Defendant Lynch willfully infringed upon Rolex's Registered Trademarks.  The fact that the Defendant used identical trademarks to those used by Rolex provides strong evidence that the Defendant was purposefully attempting to confuse the market place and trade counterfeit Rolex watches on the reputation of original genuine Rolex timepieces. <u>PetMed Express, Inc.</u>, 336 F. Supp. 2d at 1220.   Rolex presented evidence that the Defendant Lynch knew that he was selling counterfeit Rolex watches in violation of the Registered Trademarks in the Declaration of Charles Berthiaume. (Doc. # 13-1).  Berthiaume purchased the counterfeit watches from the Defendant Lynch on behalf of Rolex U.S.A. Berthiaume then reported the Defendant Lynch's operation to LCSO.   After making an undercover purchase from Lynch, Deputies from the LCSO arrested the Defendant.  After his arrest, the Defendant admitted to the deputies that he knew the watches he was selling were counterfeit Rolex watches. (Doc. # 13, ¶ 18).  Thus, the Defendant Lynch admitted to deputies that he had knowledge he was willfully selling counterfeit Rolex watches in violation of Rolex's Registered Trademarks.   Furthermore, the Defendant Lynch's refusal to participate in this

litigation is a strong indicator to the Court that Lynch willfully infringed upon Rolex's Registered Trademarks and took advantage of Rolex's high quality brand name. <u>Fitzgerald Pub. Co., Inc.</u>, 807 F.2d at 1112.

Based upon the Defendant's admission that he willfully sold counterfeit Rolex watches and the fact that he has failed to defend the allegations made in Rolex's Complaint, the Court recommends that damages be imposed on the Defendant. While Rolex could ask for as much as $2,000,000 for each violation of its Registered Trademarks, it chose instead to ask for $100,000 per infringement. Courts have found that such damage awards are awarded not only as just compensation for actual losses, but also to deter future counterfeiting of the Registered Trademark. As such, the Court recommends that the amount of damages requested by Rolex is reasonable and should be awarded.

(3) <u><em>Permanent Injunction</em></u>

Rolex also seeks a permanent injunction to prevent Defendant Lynch from infringing upon Rolex's Registered Trademarks in the future. In addition to previously discussed provisions of the Lanham Act, 15 U.S.C. § 1116(a) provides, in relevant part, that "[t]he several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." <u>Nike, Inc.</u>, WL 3535500 at *5.

A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of the hardships between plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

permanent injunction. Id. (citing eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 390–92, 126 S. Ct. 1837, 164 L.Ed.2d 641 (2006)).

In eBay, the Supreme Court rejected a "general rule" that either presumed irreparable injury or categorically denied it in patent cases. Id. at 393–94. In North American Medical Group, Inc. v. Axiom Worldwide,Inc., the Eleventh Circuit declined to decide whether a presumption of irreparable injury in a trademark infringement case "is the equivalent of the categorical rules rejected by the [Supreme] Court in eBay." Nike, Inc., WL 3535500 at *5 (citing 522 F.3d 1211, 1228 (11th Cir. 2008)).

In Axiom Worldwide, the Eleventh Circuit confronted the relatively unique circumstance of trademark infringement arising from a defendant's use of the plaintiff's trademarks in meta tags on its website, which meta tags were not displayed to visitors to the website. Id. at 1216–1217. In analyzing whether defendant was entitled to a preliminary injunction, the Eleventh Circuit acknowledged that its "prior cases do extend a presumption of irreparable harm once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim." Id. at 1227. The court declined to resolve the issue of whether the presumption would be sufficient to establish irreparable harm in light of eBay, instead remanding the case to the district court to determine whether irreparable harm was shown without reliance on the presumption, among other things. Id. at 1228.

Accordingly, the Court must examine the well-pleaded allegations of the Complaint--now deemed admitted-- by Defendant Lynch and the evidence presented by Rolex to determine whether irreparable harm has been shown without reliance on the presumption.  Rolex asserts and the Defendant admits that:

- Rolex is responsible for maintaining control over the quality of Rolex Products and services in the United States.

- Rolex has developed an outstanding reputation because of the uniform high quality of Rolex Watches and the Rolex Registered Trademarks are distinctive marks used to identify these high quality products originating with Rolex.
- Rolex has used its Registered Trademarks and its predecessors for many years in connection with Rolex Watches and related products.
- Rolex has done extensive advertising, sales and the wide popularity of Rolex products, have made the Rolex Registered Trademarks famous and have been famous well before the Defendant Lynch's actions.
- The Defendant Lynch's actions caused confusion in the market place because Rolex Registered Trademarks have acquired secondary meaning so that any product or advertising bearing said marks is immediately associated by the consuming public with Rolex.
- Rolex has gone to great lengths to protect its name and enforce the Rolex Registered Trademarks.

These facts establish that Rolex has developed goodwill among the consuming public which would be undermined if the Defendant Lynch is not prohibited from selling counterfeit watches bearing the Rolex Registered Trademarks.  Particularly since the watches sold by Lynch are not manufactured to the high quality standards a consumer would expect from a Rolex watch. As the Court noted above, the Defendant Lynch willfully infringed upon Rolex's Registered Trademarks and his failure to respond to this litigation in any manner demonstrates a likelihood that he would infringe upon Rolex's Registered Trademarks again if an injunction is not forthcoming.  The harm to Rolex is evident in that its name and reputation would be damaged as well as lost profits from sales.  The injunction would protect the public interest by protecting consumers from being misled and confused as to the source of the Defendant Lynch's unauthorized merchandise bearing the Rolex marks. See BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc., 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount.").  Therefore, it is respectfully recommended that the Court issue a

permanent injunction barring the Defendant Lynch from selling or trading in counterfeit Rolex watches.

(4) <u>*Unknown Defendants*</u>

The Complaint names John Doe Defendants 1-10, Unknown Websites 1-10 and Unknown Entities 1-10 as Defendants in this case.  Rolex has stated that it would voluntarily dismiss the Complaint against the Unknown Defendants when a default judgment is entered against the Defendant Lynch.  Since the Court recommends that default judgment should be entered against the Defendant Lynch for failure to answer or otherwise defend against the Complaint, the Court also recommends that the Complaint against the Unknown Defendants John Does 1-10, Unknown Websites 1-10 and Unknown Entities 1-10 should be dismissed.

**<u>CONCLUSION</u>**

Based upon the record in this case, the Defendant James Michael Lynch has failed to answer or otherwise defend his self against Rolex's Complaint that he willfully infringed Rolex's Registered Trademarks.  As such, it is respectfully recommended that the District Court enter a default judgment against the Defendant James Michael Lynch, award damages in the amount of $800,000 and issue a permanent injunction to prevent future infringement of Rolex's Registered Trademarks.

Accordingly, it is now

**RECOMMENDED:**

The Plaintiff, Rolex Watch USA, Inc.'s Motion for the Entry of a Final Judgment and Injunction by Default against Defendant (Doc. #13) should be **GRANTED**.

(1) Default Judgment should be entered against the Defendant James Michael Lynch.

(2) Damages should be awarded to the Plaintiff, Rolex U.S.A. Inc. in the amount of $100,000 for each infringement for a total amount of $800,000.

(3) A permanent injunction should be entered against the Defendant James Michael Lynch preventing him from selling, distributing, manufacturing or advertising over the internet, on television or in print counterfeit watches or accessories that bear Rolex Registered Trademarks.

(4) The Complaint against the Unknown Defendants, John Does 1-10, Unknown Websites 1-10, and Unknown Entities 1-10 should be dismissed.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 2nd day of May, 2013.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record